■ ⸱ VILLAGE OF MOUNT KISCO, Appellant, v. CITY OF NEW YORK et al., Respondents.— In an action to declare that certain lands situated in plaintiff village and owned by defendant city are subject to an easement running to the plaintiff for the laying of a proposed lateral sewer line therein, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered August 14, 1964, which denied plaintiff's motion for summary judgment, granted defendants' cross motion for summary judgment, and dismissed the complaint. Judgment affirmed, without costs. No opinion. Christ, Acting P. J., Hill, Rabin and Benjamin, JJ., concur; Hopkins, J., dissents and votes to reverse the judgment, to deny the defendants' cross motion for summary judgment, and to grant plaintiff's motion for summary judgment, with the following memorandum: I construe the contract between the parties as including an implied obligation on the part of the defendant city to co-operate with the plaintiff in the construction of the lateral sewer under consideration. The parties are both municipal corporations, and both are under a duty to their inhabitants to provide a potable water supply and a proper sewage disposal system. The common objective of the parties in making their contract in 1908 was to discharge these duties, not only for the immediate future, but also for many years to come. Indeed, the contract itself speaks of making " proper allowance for increase in population " of the plaintiff. Hence, there are continuing duties of performance under the contract, until by mutual agreement, the contract is terminated. Significantly the contract provides that (1) the object of the contract is to protect the water supply of the defendant city from potential pollution arising from untreated sewerage within plaintiff's boundaries; (2) to secure relief from such a hazard, the defendant city is bound to build a disposal plant, pumping station and trunk sewers, and the plaintiff is bound to build a system of sewers, not only as specifically described in the contract, but also in the future; (3) the sewers described to be built by the plaintiff are of the gravity flow type; and (4) the defendant city shall receive the sewage at the pumping station and dispose of the sewage " permanently without cost or expense " to the plaintiff. When a court declares the existence of an implied obligation under a contract, it indulges in the imaginative process of determining the meaning and purpose of the contract, and then to effectuate the intent of the parties by preventing action or refusal of action by one party which will hinder or impair the performance of the other party according to the terms of the contract (*Price* v. *Spielman Motor Sales Co.*, 261 App. Div. 626, 628). The process has been well described by Judge FINCH in *Genet* v. *Delaware & Hudson Canal Co.* (136 N. Y. 593, 609) referring to implied promises: " They always exist where equity and justice require the party to do or to refrain from doing the thing in question; where the covenant on one side involves some corresponding obligation on the other; where by the relations of the parties and the subject-matter of the contract a duty is owing by one not expressly bound by the contract to the other party

in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott* v. *The State*, 99 N. Y. 101), and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate that they intended to effect. (*King* v. *Leighton*, 100 N. Y. 386.)" No doubt the process has limits and cannot be invoked to find a promise which is so remote from the subject matter of the contract and the relations of the parties that the contract is distorted and an unreasonable burden of performance is thrust on the party so charged. But within its limits and based on the fairly inferable expectations of the parties the process is a well-recognized technique in the construction of a contract (*Patterson* v. *Meyerhofer*, 204 N. Y. 96, 101; *Ryder Bldg. Co.* v. *City of Albany*, 187 App. Div. 868, 870; 5 Williston, Contracts [rev. ed.], § 1293A, pp. 3686–3687; *id.* [3d ed.], § 669, p. 154). The defendant city may not, therefore, prevent the performance of the obligation of the plaintiff at a lesser expense and in accordance with the method of construction which the contract itself described by refusing to allow the laying of the sewer line across the property of the defendant city purchased and used by it solely for the purpose of the contract. We should not apply the more restricted interpretation that we might give to a contract between private individuals; here the parties are municipalities engaged in municipal activities of a permanent and hygienic character. The essence of their contract is co-operation in these activities, and I see neither a distortion of their contract nor an undue burden of performance imposed on the defendant city by implying the obligation to allow the use of its land for a sewer easement.